# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

PAMELA MARIE EVERETT PLAINTIFF

v. NO. 4:09CV00822 HDY

MICHAEL J. ASTRUE, DEFENDANT
Commissioner of the Social
Security Administration

## MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Pamela Marie Everett ("Everett") began her attempt to obtain benefits by filing an application for disability insurance benefits pursuant to the provisions of the Social Security Act ("Act"). Her application was denied initially and upon reconsideration. She next requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"), who eventually issued a decision adverse to Everett. She then appealed the ALJ's decision. The Appeals Council affirmed the ALJ's decision, which became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Everett thereafter commenced this proceeding by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. The standard requires the Court to take into consideration "the weight of the evidence in the record and apply a balancing test to evidence which is contrary." See Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009) [internal quotations and citations omitted].

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that Everett did not engage in substantial gainful activity "during the period from her alleged onset date of May 13, 2006, through her date last insured of March 30, 2007." See Transcript at 13.[1] At step two, he found that she had the following severe impairments through the date last insured: chronic obstructive pulmonary disease, obesity, degenerative joint disease, and arthritis. At step three, he found that through the date last insured, she did not have an impairment or combination of impairments listed in, or medically equal to, the governing regulations. The ALJ then found Everett's residual functional capacity to be as follows:

---

[1] The Commissioner represents the following, which the Court accepts as true:

> In her current application, [Everett] alleged disability since May 13, 2006. ... However, [she] filed a prior Title II application on June 6, 2006, alleging the same disability onset date of May 13, 2006. ... On July 27, 2006, the Social Security Administration denied [Everett's] prior application at the initial level, and [she] did not appeal this determination. ... Thus, the issue of [her] disability has been adjudicated through July 27, 2006, the date that she was last denied benefits. Because the current ALJ did not reopen [Everett's] prior determination, the doctrine of res judicata bars this Court from considering [her] disability for all times prior to July 28, 2006. ...

See Document 15 at 1, n.1.

> After careful consideration of the entire record, the undersigned finds that through the date last insured, [Everett] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with some additional limitations. Specifically, the [ALJ] finds that [Everett] is capable of lifting and carrying up to 10 pounds occasionally and objects such as files, dockets, and ledgers frequently, sitting for up to a total of 6 hours during an 8-hour workday, standing and/or walking for less than 6 hours during an 8-hour workday, with only occasional stooping, crawling, climbing, crouching, balancing, and kneeling and no exposure to concentrated dust or fumes.

See Transcript at 14. At step four, he found that through the date last insured, she was unable to perform her past relevant work. At step five, the ALJ found that through the date last insured, Everett's residual functional capacity, age, education, work experience, and the testimony of a vocational expert were such that there were jobs in the national economy that Everett could have performed. Accordingly, the ALJ concluded that she was not disabled within the meaning of the Act at any time between May 13, 2006, and March 30, 2007.

EVERETT'S CREDIBILITY. Are the ALJ's findings supported by substantial evidence on the record as a whole? Everett thinks not. As her sole claim, she maintains that her credibility was erroneously adjudged in the following three respects: (1) her explanation for her "limited" medical history was not considered, (2) no explanation was offered for how the medical findings were inconsistent with the degree of disabling pain and symptoms alleged by her, and (3) her testimony and/or representations regarding her condition were mis-characterized by the ALJ.

In Pearsall v. Massanari, 274 F.3d 1211, 1217-1218 (8th Cir. 2001), the Court of Appeals stated the following regarding the proper evaluation of subjective complaints:

> ... Before determining a claimant's [residual functional capacity], the ALJ first must evaluate the claimant's credibility. In evaluating subjective complaints, the ALJ must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; [the] duration, frequency and intensity of pain; [the] dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. at 1322. ... The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. ...

The Commissioner need not explicitly discuss each Polaski v. Heckler factor but "only need acknowledge and consider those factors before discounting a claimant's subjective complaints." See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

Before determining Everett's residual functional capacity, the ALJ evaluated Everett's credibility. The ALJ did so in the following manner:

> [Everett's] medical history is not necessarily consistent with her allegations of disability. In May 2006, [she] was examined by Dr. Mark Malloy when she arrived at the Saline Memorial Hospital emergency room complaining of shortness of breath. Dr. Malloy diagnosed [her] with chronic obstructive pulmonary disease and noted that [she] had an acute exacerbation of the condition leading to her symptoms. A chest x-ray ordered by Dr. Malloy was negative. He also wrote that [Everett] was a smoker and was also obese. Dr. Malloy noted that [her] condition improved very quickly with treatment and upon discharge she had no wheezing, very little coughing and no shortness of breath. ...

In October 2006, Dr. Brian Sudderth wrote that ... Everett had nonspecific symptoms of pain that radiated into her legs. He noted that [she] stated that she had difficulty getting up and down and could not sit for long periods of time. In January 2007, Dr. Sudderth opined that [she] had chronic lumbar pain and pain associated with an old right knee injury. ...

A physician at the Christian Community Care Clinic diagnosed ... Everett with degenerative joint disease in September 2006. ...

In June 2007, Dr. A. Jack Somers, Jr., a certified medical examiner, evaluated [Everett]. Dr. Somers wrote that [she] was unable to squat and rise and that an x-ray of [her] right and left knees showed moderate degenerative changes of the patella on both knees, but that the joint spaces were well maintained. A spirometry report showed that [Everett] had moderate restriction with approximately 70% predicated pulmonary function. Dr. Somers diagnosed [her] with chronic obstructive pulmonary disease, degenerative joint disease, and lower back pain. ...

The [ALJ] acknowledges that [Everett] has alleged severe disabling pain and symptoms. These allegations are hereby considered pursuant to the guidelines in ... Polaski v. Heckler, 751 F.2d 943 (8th Cir. 1984) ...

[Everett] has alleged that she suffers from severe disabling pain and symptoms.

It must first be noted that the medical findings that are present are not consistent with the degree of disabling pain and symptoms alleged by [Everett]. Certainly, her allegations cannot be disregarded solely on this basis, but this is a factor which must be considered. The absence of objective medical findings to support allegations of disabling pain is one factor which can be used to evaluate credibility. The fact that she may have some level of disability due to knee problems, lower back pain, and respiratory difficulties was given due consideration in reaching the finding that she would not be able to perform her past relevant work, but that she would be able to perform sedentary jobs with the additional limitations mentioned previously.

> With regard to aggravating factors and functional limitations, [Everett] alleges that she is almost wholly incapacitated by her condition. [She] testified that she becomes short of breath with any physical exertion and that she has severe pain in her knees and lower back. She stated that she can only stand for approximately 20 minutes and has difficulty walking even short distances. [Everett] also testified that she has difficulty sitting for extended periods of time due to back pain. However, the [ALJ] notes that [Everett] stated that her respiratory condition has improved since being placed on medication. She also indicated in her adult function report that she was able to do household chores such as cooking and washing dishes with only short breaks, drive a car, go outside, shop for groceries, and spend time with others. ... Overall, [her] daily activities indicate that she has the ability to perform a sedentary range of work with some additional limitations.
>
> Notably, there is no probative, objective medical evidence to show that [Everett] has ever been advised by any treating or examining physician that her symptoms and/or impairments have ever been of such severity as to completely preclude involvement in substantial gainful activity at every exertional level. There is also no objective medical evidence to show that [she] has ever been medically advised by treating physicians to permanently limit activities secondary to any medically determinable impairment or combination of impairments.
>
> [Everett] testified that she is currently taking the following medications: Albuterol and Spiriva for chronic obstructive pulmonary disease, naproxen for arthritis, blood pressure medication, and hormone medication. It does not appear that [she] is currently taking any prescription narcotic pain medication or that she has had to rely on strong narcotic pain medication for any extended periods of time. This fact undermines [her] credibility as to the severity of pain symptoms. Furthermore, the record contains no evidence that significant side-effects from medication are being experienced by [her] at this time.

See Transcript at 14-16. On the basis of the foregoing, the ALJ found that Everett's complaints were not fully credible.

Everett first maintains that her credibility was erroneously adjudged because her explanation for her medical history was not considered. She acknowledges that her medical history is "limited" but the ALJ did not consider the reason why, i.e., she has "trouble going to the doctor regularly because she has neither money nor health insurance" and only receives treatment at a charitable clinic where she is obligated to pay a small charge. See Document 14 at 6.[2]

There are at least two problems with Everett's assertion. First, the ALJ did not discount her credibility because of her "limited" medical history. He simply noted that her medical history was "not necessarily consistent with her allegations of disability." See Transcript at 14. Thus, it was not the scope of her medical history that caused him to discount her credibility but the lack of consistency between her medical history and her allegations. Second, it appears that something more than Everett's bare statement of financial hardship is required in order for the Commissioner to take the hardship into account. See Carrigan v. Astrue, 2009 WL 734116 at 6 (W.D.Ark. 2009) (Bryant, J.).[3]

---

2

It should be noted that "if the claimant is unable to follow a prescribed regimen of medication and therapy to combat her disabilities because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits. See Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992).

3

"[T] claimant's bare statement that ... she is unable to afford medical treatment is not sufficient to establish that inability. ... Instead, the claimant must make some showing that establishes ... she was unable to afford medical treatment. ... For instance, the claimant must show that ... she qualifies for a Medicaid card, sought to obtain low-cost medical treatment, or was denied medical care because of ... her financial condition. ..." See Carrigan v. Astrue, 2009 WL 734116 at 6.

Everett next maintains that her credibility was erroneously adjudged because no explanation was offered for how the medical findings were inconsistent with the degree of disabling pain and symptoms alleged by her. Specifically, she maintains that no explanation was offered for how the medical evidence relating to her knees and lungs was inconsistent with her subjective complaints of knee pain and shortness of breath.

The Commissioner could and did find that the medical findings are inconsistent with the degree of disabling pain and symptoms alleged by Everett because they are, in fact, inconsistent. With specific regard to the condition of Everett's knees, the Commissioner noted the September of 2006 findings of a physician at the Christian Community Care Clinic. The physician noted that Everett's complaint of knee pain was likely due to degenerative joint disease. See Transcript at 186. Otherwise, the physician's notes reflect nothing remarkable about the condition of Everett's knees. The Commissioner noted the January of 2007 findings of Dr. Brian Sudderth, who found that Everett experienced some right knee pain due, in large part, to an old right knee injury. See Transcript at 180. Otherwise, his notes reflect nothing remarkable about the condition of her knees. The Commissioner also noted the June of 2007 findings of Dr. A. Jack Somers, Jr. ("Somers"), who found that an x-ray of Everett's knees revealed moderately severe degenerative changes to the patella in both knees but the joint spaces were well maintained. See Transcript 194. Otherwise, his notes also reflect nothing remarkable about the condition of her knees.

With specific regard to the condition of Everett's lungs, the Commissioner noted the May of 2006 findings of Dr. Mark Malloy. Everett presented to the Saline County Memorial Hospital complaining of shortness of breath. See Transcript at 160, 164. The treatment notes reflect that she suffers from chronic obstructive pulmonary disease, bronchitis, and "smoking abuse." See Transcript at 157. The notes additionally reflect the following: (A) Everett smokes three packs of cigarettes a day and is obese; (B) an x-ray of her chest was "essentially normal," see Transcript at 158, 171; and (C) her symptoms cleared "very quickly," and by the time of her discharge on May 22, 2006, "she had no wheezing, very little cough and no shortness of breath," see Transcript at 157. The Commissioner also noted the June of 2007 findings of Somers, who found no evidence that Everett suffered from chest pain, that she was not then a smoker, and that a spirometry report revealed only "moderate restriction." See Transcript at 196.[4]

The foregoing findings paint a picture of a claimant about whom the medical evidence is unremarkable. Everett undoubtedly suffers from, inter alia, pain in her knees and chronic obstructive pulmonary disease, but the findings as to those impairments are not consistent with the severe pain she claims to be experiencing. The Commissioner could and did therefore find as he did with regard to the inconsistencies between her impairments and the severity of the pain she claims to be experiencing.

4 The Court understands a "spirometry report" to measure lung capacity or the flow of air in and out of a person's lungs.

Everett last maintains that her credibility was erroneously adjudged because her testimony and/or representations regarding her condition were mis-characterized by the ALJ. In support of her assertion, Everett cites the Court to what she purports to be numerous mis-characterizations of her testimony and/or representations by the ALJ. See Document 14 at 8-12.[5]

Everett's assertion centers primarily upon the ALJ's alleged mis-characterization of an adult function report, a disability report, and her representations as to narcotic pain medication. With regard to the adult function report, the ALJ characterized it as follows: "[Everett] ... indicated in her adult function report that she was able to do household chores such as cooking and washing dishes with only short breaks, drive a car, go outside, shop for groceries, and spend time with others." See Transcript at 15. Comparing the ALJ's characterization of the adult function report with the representations contained in the report, see Transcript at 116-123, the Court is satisfied that his characterization, although not comprehensive, is adequate. Everett admits being able to perform the activities, and the ALJ could and did therefore find that she can. Despite her assertion that she cannot perform them well, he does not appear to have offered a finding as to the extent to which she can perform them.

---

5

The ALJ has an obligation to fully and fairly develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). The obligation undoubtedly includes the responsibility of fairly characterizing the claimant's testimony and/or representations. There is no bright line test for determining whether the ALJ fully and fairly developed the record; that determination is made on a case-by-case basis. See Id.

With regard to the disability report, Everett represented in the report that her respiratory condition had worsened. See Transcript at 143. The ALJ instead relied upon her testimony during the hearing that her condition had improved since being placed on medication. See Transcript at 15, 54. Taking into account the inconsistencies in the record regarding the changes in her respiratory condition, inconsistencies which the Commissioner noted in his brief, the Court is satisfied that the ALJ's reconciliation of the disability report and her testimony as to her condition is adequate.[6] Although her condition had undoubtedly worsened by the time she completed the disability report, the ALJ could and did find that it subsequently improved once she began taking mediation.

With regard to Everett's representations as to narcotic pain medication, the ALJ found that she was not "currently" taking any such medication and had not had to rely upon such medication for "any extended periods of time." See Transcript at 16. The Court is satisfied that his findings are consistent with the record. Although she had taken narcotic pain medication in the past, see Transcript at 115, there is no indication that she did so for any extended periods of time or was doing so at the time of the hearing. Although she has a plausible explanation for why, i.e., a lack of funds, the explanation does not negate the finding that she was not taking such pain medication.

---

6

"It is proper for the ALJ to discount a claimant's subjective complaints when the evidence as a whole demonstrates inconsistencies. Burns v. Sullivan, 888 F.2d 1218, 1220 (8th Cir. 1989)." See Document 15 at 11.

For the foregoing reasons, the Court finds no merit to Everett's assertions. Notwithstanding that finding, though, the Court has reviewed the ALJ's treatment of her credibility, and specifically her subjective complaints. The ALJ's findings as to Everett's credibility are supported by substantial evidence on the record as a whole. The ALJ considered the objective medical evidence, see Transcript at 14-15; cited the governing regulations and Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984), see Transcript at 15; and engaged in a brief discussion of the evidence touching on the Polaski v. Heckler factors, see Transcript at 15-16. With specific regard to Everett's daily activities, which appear to be the focal point of her challenge to the ALJ's credibility findings, the ALJ could and did find that her daily activities are not consistent with the severity of pain she claims to be experiencing.

CONCLUSION. The Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Everett's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 1 day of December, 2010.

UNITED STATES MAGISTRATE JUDGE